UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

UNITED STATES OF AMERICA,           :        10 CR. 100 (JG)

          - v. -                    :

**COREY DAVIS,**                    :

                    Defendant.      :

--------------------------------X


**DEFENDANT COREY DAVIS'S MOTION AND MEMORANDUM IN SUPPORT THEREOF
TO SUPPRESS CUSTODIAL STATEMENTS**

LEONARD F. JOY, ESQ.
Federal Defenders of New York
Attorney for Defendant
**COREY DAVIS**
One Pierrepont Plaza, 16th Floor
Brooklyn, New York 11201
Tel.: (718) 330-1208

**DEIRDRE D. VON DORNUM**
Of Counsel

TO:  **LORETTA E. LYNCH, ESQ.**
     United States Attorney
     Eastern District of New York
     271 Cadman Plaza East
     Brooklyn, New York 11201
     Attn: **AMIR TOOSSI, ESQ.**
          Assistant United States Attorney

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X

UNITED STATES OF AMERICA,          :          **10 CR. 100 (JG)**

     - v. -                            :

**COREY DAVIS,**                            :

           Defendant.   :

------------------------------X

**DEFENDANT COREY DAVIS'S MOTION AND MEMORANDUM IN SUPPORT THEREOF
TO SUPPRESS CUSTODIAL STATEMENTS**

The defendant, Corey Davis, hereby moves under Federal Rules of Criminal Procedure 12(b)(3) and 41(h) to suppress certain statements elicited from him in violation of his <u>Miranda</u> and Fifth Amendment rights.  In particular, Mr. Davis moves to suppress statements that he made without being informed of his <u>Miranda</u> rights.  These statements were the product of custodial interrogation by a lieutenant of the Bureau of Prisons who was investigating a physical altercation between Mr. Davis and another prisoner.

### Statement of Facts

Corey Davis is charged in a one-count indictment with having assaulted a fellow inmate at the Metropolitan Detention Center in Brooklyn, in violation of 18 U.S.C. § 113(a)(6), on May 8, 2009. <u>See</u> Indictment, attached as Exhibit A.

On May 8, 2009, Mr. Davis was incarcerated at the

Metropolitan Detention Center in Brooklyn.  *See* Declaration of Corey Davis (hereinafter "Davis Decl."), at ¶ 2, attached as Exhibit B.  He was being housed in the "B-A Unit," an open dormitory, general population unit with approximately 120 inmates assigned to it at that time.  *See* *id.*  He was able to move freely among the dormitory room, the television room, and the recreation deck, and to use the telephone freely.  *See* *id.*  His movement was restricted only during the counts and the evening lockdown.  *See* *id.*  That afternoon, Mr. Davis and fellow inmate Robert Wright ("John Doe" in the indictment) had an altercation.  *See* *id.* at ¶ 3.

Immediately after the altercation, Mr. Davis was transferred out of general population and into the segregated housing unit ("SHU"), where he was held in a small single cell with only a door slot and small window for 23 hours a day.  *See* *id.* at ¶ 4. In the SHU, he could not move freely to any other destination within the prison, he had little ability to communicate with other inmates, he was only permitted one social call per month, and he had to receive specific permission to make a legal call or visit the small SHU law library.  *See* *id.*

In the early evening of May 8, 2009, after Mr. Davis had been placed in the SHU cell, Lieutenant Selby of the BOP Special Investigative Section ("S.I.S.") came to the SHU to speak to Mr. Davis about the altercation with Robert Wright.  *See* *id.*, at ¶ 5.

Lieutenant Selby stood at the small window of the cell and spoke to Mr. Davis through the glass. See id. The lieutenant identified himself as a member of S.I.S. and informed Mr. Davis that he was investigating the incident. See id. The lieutenant stood at the glass and spoke to Mr. Davis for approximately five to ten minutes, telling Mr. Davis what he had heard from other inmates had occurred, and asking Mr. Davis for his version of the altercation. See id. At no point did the lieutenant inform Mr. Davis of his rights, neither his Miranda rights nor his rights under the BOP administrative procedures. See id., at ¶ 6. At no point did the lieutenant ask Mr. Davis, who was standing within the small cell, whether Mr. Davis wished to speak to him. See id. At no point did the lieutenant inform Mr. Davis that he had no obligation to speak to him. See id. Mr. Davis believed he was not free to decline to speak to the lieutenant, and that if he were to refuse to answer, he would get in more trouble. See id.

After the altercation and the interview with Lieutenant Selby, Mr. Davis was held for a period of seven months in the SHU at MDC Brooklyn, before being transferred first to FDC Philadelphia for one month, and then to FCI Beckley, where he continued to be held in the SHU. No administrative or BOP proceeding was ever held regarding the altercation between Mr. Davis and Mr. Wright. On February 12, 2010, an indictment was filed charging Mr. Davis with the alleged assault that was the

-4-

subject of his interview by Lieutenant Selby.  <u>See</u> Indictment,
Exhibit A.

The government has produced a typewritten statement that it
contends contains Lieutenant Selby's write-up of what Mr. Davis
said to him during this interview.  <u>See</u> "Inmate Statements CD-2",
attached as Exhibit C; 7/27/10 Conference Transcript, at 6.2-9,
attached as Exhibit D.  The government has indicated that it
intends to introduce Mr. Davis's statements to Lieutenant Selby
at trial.  7/27/10 Conference Transcript, at 6.11-12.  The
government has conceded that no <u>Miranda</u> warnings were given to
Mr. Davis prior to or during this interview.  <u>Id.</u> at 6.13-19.

## Argument

Mr. Davis was subjected to custodial interrogation by a BOP
officer acting in an investigative capacity without first being
warned of his <u>Miranda</u> rights.  Any statements he made during this
interrogation may not be used in the government's case-in-chief
under the rule established in <u>Miranda v. Arizona</u>, 384 U.S. 436
(1966).

The government may use a defendant's statement without
transgressing his Fifth Amendment right against self-
incrimination only when the decision to confess is the
defendant's free choice.  <u>See Miranda</u>, 384 U.S. 436, 444 (1966).
"The prosecution may not use statements, whether exculpatory or

inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. Specifically, prior to a custodial interrogation, a law enforcement agent must warn the defendant of his rights to remain silent and to legal counsel. 384 U.S. at 479. If a suspect is not so warned, the prosecution is barred from using statements obtained during the custodial interrogation to establish its case-in-chief. See Michigan v. Harvey, 494 U.S. 344, 350 (1990).

An interview is a custodial interrogation for *Miranda* purposes "when a law enforcement official questions an individual and that questioning was (1) conducted in custodial settings that have inherently coercive pressures that tend to undermine the individual's will to resist and compel him to speak (the in custody requirement), and (2) when the inquiry is conducted by officers who are aware of the potentially incriminatory nature of the disclosures sought (the investigative intent requirement)" United States v. Morales, 834 F.2d 35, 38 (2d Cir. 1987).

## I.
## Mr. Davis Was Not Advised Of His <u>Miranda</u> Rights.

The government has conceded that at no point before or during this interrogation was Mr. Davis advised of his rights to remain silent or to have the assistance of counsel.

## II.
## Mr. Davis' Statements Were The Product
## Of Custodial Interrogation.

There is no per se rule requiring Miranda warnings when a person is questioned while in prison.  However, these warnings must be given when questioning occurs in a custodial setting. The Second Circuit recently has emphasized that in evaluating whether a particular interrogation occurred in a custodial setting, a "court should consider, among other things, 'whether a reasonable person would have *thought he was free to leave the police encounter at issue*.'" Georgison v. Donelli, 588 F.3d 145, 156 (2d. Cir. 2009)(emphasis in original).  In making this determination, the Second Circuit has looked to the following factors: (1) the behavior and subjective understanding of the defendant during the interview; (2) whether there was a "measure of compulsion above and beyond that inherent in custody itself"; (3) whether the defendant was physically restrained during the interview; and, (4) the nature of the room where the interrogation took place.  *Id*. at 157.[1]

The statements taken by Lieutenant Selby are the product of

---

[1] "[C]ourts of all jurisdictions now appear to agree that the proper inquiry is into whether there are additional restraints, above and beyond those generally associated with daily prison life, and whether the inmate felt or thought that he was free to leave the interview."  United States v. FNU LNU, No. 09 Cr. 1207 (RPP), 2010 WL 1686199, at n. 10 (S.D.N.Y. April 22, 2010) (citing 2 Wayne R. Lafave et al., Criminal Procedure §6.6(b), n. 16 (3d ed. 2007).

custodial interrogation.  Mr. Davis did not believe he was free
to refuse to participate in the interview.  His transfer from
general population to the segregated housing unit increased the
compulsory nature of the setting beyond that inherent in the
typical prison setting. See United States v. Marion, No. 09-382
(KI), 2010 WL 1641150, *2-3 (D. Or. April 19, 2010); see also
Maryland v. Shatzer, __ U.S. __, 130 S.Ct. 1213 (2010) (return to
general prison population qualified as a break in custody for
purposes of Miranda and Edwards v. Arizona).  Indeed, it was nly
a couple of hours prior to the interview that Mr. Davis had been
taken out of general population and placed in the severely
restricted segregated housing unit because of the incident that
was the subject of the interview.  He was inside his solitary
cell throughout the interview with Lieutenant Selby and had no
ability to go anywhere else, or to move out of earshot of
Lieutenant Selby.  The lieutenant did not ask Mr. Davis if he
were willing to speak with him, but, instead, immediately after
identifying himself as a member of the special investigative
section, began trying to elicit statements from Mr. Davis about
the altercation.  While Mr. Davis was not in handcuffs, he was
inside a very small locked room with the lieutenant speaking to
him through the glass window of the cell, standing in close
proximity to Mr. Davis. Taken together, these facts compel the
conclusion that a reasonable person would not have "thought he

was free to leave." Georgison, 588 F.3d at 156-57. Indeed, Mr. Davis subjectively believed he had to answer the lieutenant's questions or he would be punished further.

### III.
### The Custodial Interrogation Was Conducted By An Officer Who Was Aware of the Potentially Incriminatory Nature Of The Disclosures Sought.

An officer's investigative intent is determined by his awareness that information he elicits could be used in a criminal prosecution, not by the likelihood that such information will in fact be used. Mathis v. United States, 391 U.S. 1, 4-5 (1968); United States v. Rodriguez, 356 F.3d 254, 256-58 (2d Cir. 2004); United States v. FNU LNU, No. 09 Cr. 1207 (RPP), 2010 WL 1686199, at *10 (S.D.N.Y. April 22, 2010).

Here, the lieutenant who questioned Mr. Davis was an S.I.S. officer specifically tasked with investigating the incident. There is no reason to believe the lieutenant was unaware that assaults within the prison can be the subject of a criminal prosecution, and that a defendant's statements can be used in such prosecutions.

### Conclusion

The Government cannot meet its burden of showing that the statements were not obtained in violation of the Fifth Amendment. Accordingly, the Fifth Amendment requires that Mr. Davis's statements to the Lieutenant be suppressed. **Wherefore**, it is respectfully requested that this Court enter an order suppressing the statements made by Mr. Davis to Lieutenant Selby, which were obtained in violation of the Fifth Amendment to the United States Constitution.

Dated: Brooklyn, New York
      August 9, 2010

                   LEONARD F. JOY, ESQ.
                   Federal Defenders of New York, Inc.

                   Attorney for Defendant
                   **COREY DAVIS**
                   One Pierrepont Plaza
                   Brooklyn, New York  11201
                   Tel.: (718) 330-1208

                   DEIRDRE D. VON DORNUM
                   Of Counsel.

TO:  **LORETTA E. LYNCH, ESQ.**
       United States Attorney
       Eastern District of New York
       271 Cadman Plaza East
       Brooklyn, New York 11201
       Attn: **AMIR TOOSSI, ESQ.**
            Assistant United States Attorney

# EXHIBIT A

EJK:AHT
F.#2009R01479

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ FEB 1 2 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

COREY DAVIS,

             Defendant.

- - - - - - - - - - - - - - - -X

I N D I C T M E N T

CR 10 - 0100

(T. 18, U.S.C., §§
113(a)(6) and 3551 et
seq.)

GLEESON, J.
MANN. M.J.

THE GRAND JURY CHARGES:

<u>ASSAULT</u>

     On or about May 8, 2009, within the Eastern District of
New York and the special maritime and territorial jurisdiction of
the United States, to wit: the Metropolitan Detention Center in
Brooklyn, New York, the defendant COREY DAVIS did knowingly and
intentionally assault John Doe, an individual whose identity is
known to the Grand Jury, resulting in serious bodily injury.

     (Title 18, United States Code, Sections 113(a)(6) and
3551 et seq.)

A TRUE BILL

_____
FOREPERSON

_____
BENTON J. CAMPBELL
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F. #2009R01479

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*Corey Davis,*

Defendant.

# INDICTMENT

(T. 18, U.S.C., §§ 113(a)(6) and 3551 et seq.)

*A true bill.*

_____ *Jeanette Martinez* _____

*Foreman*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____

*Clerk*

*Bail, $* _____

_____

*Amir Toossi, Assistant United States Attorney, (718) 254-6176*

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X

UNITED STATES OF AMERICA,          :          10 CR. 100 (JG)

          - v. -                   :

COREY DAVIS,                       :

                    Defendant.     :

-------------------------------X


### DECLARATION OF COREY DAVIS

I, Corey Davis, hereby declare under the penalties of perjury,
pursuant to 28 U.S.C. § 1746, that:

1.    I am the defendant in the above-captioned case and I make
      this declaration in support of a motion to suppress
      statements obtained from me by law enforcement in violation
      of my constitutional rights.  Since the only purpose of this
      declaration is to show that my constitutional rights were
      violated, I have not included every detail of what occurred.

2.    On May 8, 2009, I was incarcerated at the Metropolitan
      Detention Center in Brooklyn.  I was in general population.
      I was assigned to Unit 3-N, also known as the "B-A Unit,"
      which is a general population unit that houses about 120
      inmates. It is an open dorm, so I was able to move freely
      from the dormitory room to the television room or to the
      recreation deck, other than during counts or lockdown.  I
      could also use the telephone freely. I had weekly social
      visits, including with my son.  I was allowed to go the law
      library three times a week.

3.    On the afternoon of May 8, 2009, another inmate in the unit,
      Robert Wright, and I had an altercation.

4.    Immediately after the altercation, the guards took me out of
      the general population unit, and put me in the SHU.  I was
      placed first in a holding cell, and then in a small single
      cell with solid walls, a slot in the steel door, and a small
      glass window. I was only allowed out of the cell one hour a
      day. While in the cell, I had no contact with other inmates.
      I was only permitted one social call per month.  I had to
      receive permission to make a legal call or visit the law

library.

5.   In the early evening of May 8, 2009, I was standing in the
     SHU cell when a lieutenant came to the small glass window.
     He spoke to me through the glass for approximately five to
     ten minutes.  He said he was from S.I.S. and that he was
     investigating the incident I had with Wright.  The
     lieutenant told me he had received the unit incident report.
     He told me what other inmates were saying happened between
     me and Wright.  He asked me what happened. I answered his
     questions.

6.   The lieutenant never asked me whether I wished to speak to
     him or  not.  He never told me I had the right not to speak
     to him.  He never told me I had a right to a lawyer.

7.   I answered the lieutenant's questions because I did not want
     to get in more trouble, and the lieutenant was standing
     right there, speaking directly to me through the glass.  I
     did not believe I could refuse to say anything.


     **Wherefore**, it is respectfully requested that this Court
enter an order suppressing the statements taken from me by the
lieutenant on May 8, 2009, which were obtained in violation of
the Fifth Amendment to the United States Constitution.

     I declare under penalty of perjury that the foregoing is
true and accurate.

Dated: Brooklyn, New York
       August  9  , 2010

                                   _____
                                   Corey Davis

# EXHIBIT C



Inmate Statements:
Inmate Davis stated that Inmate Wright was disrespecting him and
making racial slurs towards him. He attempted to walk away from
him and Inmate Wright continued belittling him and made a comment
about his mother. It was at that time that he became angry and
began assaulting Inmate Wright. He states that he would never
want to fight or assault an older man in the condition of Inmate
Wright and that he attempted to walk away but Inmate Wright kept
persisting. In order to not look weak in front of the other
inmates, he felt like he had to assault Inmate Wright. He also
stated that Inmate Wright attempted to hit him with his cane.



LIMITED OFFICIAL USE --- SENSITIVE

# EXHIBIT D

1

1    UNITED STATES DISTRICT COURT
2    EASTERN DISTRICT OF NEW YORK

3    - - - - - - - - - - -    X

4    UNITED STATES OF AMERICA,    :    10 CR 100

5                                 :

6         -against-              :

7                                     United States Courthouse
                                      Brooklyn, New York
8    COREY DAVIS,                :

9                                     July 27, 2010
          Defendant.            :    2:00 o'clock p.m.

10   - - - - - - - - - - -    X

11

12              TRANSCRIPT OF CONFERENCE
            BEFORE THE HONORABLE JOHN GLEESON
13          UNITED STATES DISTRICT JUDGE

14   APPEARANCES:

15

16   For the Government:         LORETTA E. LYNCH
                                 United States Attorney
17                               BY: AMIR TOOSSI
                                 Assistant United States Attorney
18                               271 Cadman Plaza East
                                 Brooklyn, New York
19

20   For the Defendant:          DEIRDRE D. VON DORNUM, ESQ.
                                 Federal Defenders
21

22   Court Reporter:             Gene Rudolph
                                 225 Cadman Plaza East
23                               Brooklyn, New York
                                 (718) 613-2538
24

25   Proceedings recorded by mechanical stenography, transcript
     produced by computer-aided transcription. Davis, Judge

GR     OCR     CM     CRR     CSR

5

1      MR. TOOSSI:  Your Honor, the -- my response to that

2  last question would be that the defendant was not advised of

3  his Miranda rights.

4      THE COURT:  Do you intend to offer these at trial?

5      MR. TOOSSI:  At this time, yes.

6      THE COURT:  Okay.

7      MR. TOOSSI:  I think the government's -- the

8  government's position as to those statements would be that

9  there was no interrogation.

10      THE COURT:  Okay.  So there you go.  There are no

11  Miranda warnings.

12      You are moving to suppress?

13      MS. VonDORNUM:  It's likely, Your Honor.

14      Similarly, for CD-2.

15      THE COURT:  All right.  One step at a time.

16      MS. VonDORNUM:  Sorry.

17      Yes.  Yes, we will move --

18      THE COURT:  Taking baby steps here.

19      MS. VonDORNUM:  We will move to suppress.

20      THE COURT:  All right.  Now you know what you need

21  to know about CD-3.

22      MS. VonDORNUM:  Yes.

23      THE COURT:  Okay.  CD-2 is the next bullet point in

24  your letter of July 26th.

25      MS. VonDORNUM:  Yes.  It is the other statement

6

1   about which we received no information on that one.

2          THE COURT:  I take it, since this is Rule 16

3   material, this must have been given -- this must be a

4   statement made by the defendant to a person who was then known

5   to the defendant to be a law enforcement officer.

6          MR. TOOSSI:  Yes.

7          THE COURT:  Okay.  That officer is who?

8          MR. TOOSSI:  Lieutenant Selby of the Bureau of

9   Prisons.  He's now assigned to Tucson, Arizona.

10         THE COURT:  Got it.

11         Are you offering these statements at trial?

12         MR. TOOSSI:  At this time we intend to, yes.

13         THE COURT:  Okay.  If there is a motion to suppress

14  these on the ground that hypothetically there were no Miranda

15  warnings, would the response to that be yes, there were?

16         MR. TOOSSI:  There were not.  The government's

17  position was that -- position would be that the defendant was

18  not in custody at that time, under -- hold on -- because I

19  know that sounds ridiculous on its face.

20         THE COURT:  No.  I understand.

21         MR. TOOSSI:  Because --

22         THE COURT:  You are not always necessary in custody

23  for Miranda purposes even you are not free to leave the

24  premises.

25         MR. TOOSSI:  Yes.  I am going under the line of

GR      OCR      CM      CRR      CSR

7

1   cases under -- sorry, Your Honor.  I just forgot the name.

2         THE COURT:  That's all right.  We don't even have a

3   motion yet.

4         You know what's coming, right?  That's the discovery

5   you want?

6         MS. VonDORNUM:  Yes, Your Honor.

7         THE COURT:  All right.  Progress is being made here.

8         Next in the letter is to ensure that the

9   officers -- a request that the officers retain all notes and

10  memoranda, including those in scratch form.

11        I think Ms. VonDornum is right about this.

12        MR. TOOSSI:  Your Honor, I have done that.  But with

13  the caveat of this, is that -- my understanding of the

14  investigation that was conducted into the assault was that it

15  was conducted by multiple people.  Now, they have not all been

16  identified to me.  For one reason or another, and I know that

17  it is not a -- it's not a great excuse, but the reality is

18  that BOP hasn't been able to identify everybody who was

19  involved in the investigation to me.

20        To the extent that there is anybody involved in it

21  that I am not currently aware of, I have not told them that.

22  But if I am aware of a person who was involved in the

23  investigation, I have asked them to retain what they have.

24        THE COURT:  All right.  I don't want to get too

25  involved in the abstract application of this principle.  Let